IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IMMUNE THERAPEUTICS, INC.,

    Plaintiff,

v.                           Civil Action No. 3:22-cv-412

MICHAEL K. HANDLEY,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT ("the Motion") (ECF No. 18). For the reasons set forth below, the Motion will be granted in part and denied in part.

**BACKGROUND**

**I. Factual Background**

Immune Therapeutics, Inc. ("ITI") was a shareholder of Cytocom, Inc. ("Cytocom"), a bio-technology company founded in 2014 whose operations were focused on repurposing drugs that activate and balance the immune system. Compl. ¶¶ 9, 15. Michael K. Handley ("Handley") served as Chief Executive Officer of Cytocom. Id. ¶ 10. In May 2020,[1] Handley approached the

---

[1] The Complaint lists this date as May 2021; but, in the Opposition to the Motion to Dismiss for Failure to State a Claim (ECF No. 32), ITI notes that the date was typed incorrectly in the Complaint and that the correct date should be May 2020. ECF No. 32 at 2 n.1. An amendment to the Complaint will be necessary.

shareholders of Cytocom, including ITI, about merging the company with Cleveland Biolabs, Inc. ("CBLI") to create a biopharmaceutical company focused on developing new immunotherapies. Id. ¶¶ 13, 16. That merger was finalized in July 2021, ECF No. 19 at 1, and the post-merger entity changed its name to Statera Biopharma, Inc. ("Statera"). Compl. ¶ 16 n.1. ITI's claims arise out of alleged misrepresentations, false statements, and omissions made by Handley to procure the merger.

According to the Complaint, Handley needed ITI's approval for the merger to be successful, so he requested that the Cytocom shareholders agree to a "1-for-4 reverse split" and "the conversion to Series A shares in Statera of over" $3 million in existing defaulted debt with a promise that the Series A shares would convert on a 1-to-1 basis. Compl. ¶¶ 18-19. ITI alleges that Handley made this promise even though at the time, he knew it was false and had no intention of ensuring that the represented facts occurred. Id. ¶ 19. Also, Handley allegedly promised (in emails and phone calls) that Cytocom shareholders, including ITI, would receive a controlling interest in Statera ranging from 60 percent to 71 percent. Id. ¶ 21. ITI likewise alleges that Handley knew, at the time, that this promise was false and that the shareholders would own less than 50 percent of the post-merger entity. Id.

Following the merger of Cytocom and CBLI, the Series A Cytocom shares converted to Statera shares on a 3-to-1 basis rather than

the 1-to-1 basis that Handley had represented. Compl. ¶ 20. Additionally, CBLI received $14 million in capital investment funds before the finalization of the merger, and the Complaint alleges that, at all relevant times, Handley knew about the fact that this infusion of capital was planned and that, when accomplished, the infusion would dilute Cytocom shareholders' ownership stake in the post-merger entity. Id. ¶¶ 23-24. Accordingly, the shareholders received only a 38 percent interest in Statera, which was lower than the promised 61-70 percent interest that Handley had represented. Id. ¶ 22.  In sum, ITI alleges that Handley's "fraudulent misrepresentations and [the] undisclosed dilution" caused ITI to receive a much smaller interest in Statera than originally represented. Id. ¶ 25.

## II. Procedural History

To recover for the loss between the promised ownership interest and the ownership interest actually received, see Compl. ¶ 25, ITI filed this action on June 1, 2022, asserting five counts. COUNT I presents a claim under the Civil Racketeer Influenced and Corrupt Organizations ("RICO") Act claim under 18 U.S.C. § 1962(c). COUNT II presents a violation of §§ 10(b) and 20(a) of the Securities Exchange Act ("SEA") of 1934 and Rule 10b-5. COUNT III asserts a violation of § 12(2) of the Securities Act of 1933. COUNT IV is a claim for Common Law Conspiracy. COUNT V is a claim for Fraud. Id. ¶¶ 34-69. ITI seeks actual damages, which are

3

estimated to be no less than $4 million, treble damages for the RICO claim, punitive damages, and costs and attorneys' fees. <u>Id.</u> ¶¶ 70-73.

Handley filed three separate Motions to Dismiss (ECF Nos. 11, 13, 18), a Motion to Transfer Venue if the suit is not dismissed (ECF No. 15), and an Answer with Affirmative Defenses (ECF No. 20). The DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2) (ECF No. 11) was denied because the premise of that motion was that the § 10(b) claim failed to state a claim on which relief could be granted, which is an inappropriate premise for a motion asserting the absence of in personam jurisdiction, and because the Court has personal jurisdiction over Handley through § 27 of the SEA of 1934. ECF No. 39. The DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR IMPROPER VENUE PURSUANT TO FED R. CIV. P. 12(b)(3) OR TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) AND/OR 28 U.S.C. § 1406(a) (ECF Nos. 13 and 15) was denied because venue is proper in the Eastern District of Virginia Richmond Division under § 27 of the SEA of 1934 because an "act or transaction constituting the violation" occurred in this district. ECF No. 38; 15 U.S.C. § 78aa(a). Additionally, the request to transfer venue was denied because it would merely shift the inconvenience of litigation and because Handley did not carry his burden to demonstrate that transfer is in the interest of justice.

4

ECF No. 39. The sole issue that remains unresolved is whether all five counts of the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted. See ECF No. 18.

## STANDARD OF REVIEW

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff need not provide "detailed factual allegations," Twombly, 550 U.S. at 555, but must provide enough factual context so the court can draw reasonable inferences that there is "more than a sheer possibility that the defendant acted unlawfully." Iqbal, 556 U.S. at 678. Legal conclusions, a bare recitation of the elements of a claim, and "naked assertions devoid of further factual enhancement" are insufficient. Id. (quoting Twombly, 550 U.S. at 555, 557). Factual allegations—but not legal conclusions—are accepted as true for the purpose of evaluating the Motion. Twombly, 550 U.S. at 555.

When evaluating a Rule 12(b)(6) motion, the court may only rely on "the complaint in its entirety" and "documents attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). A document is incorporated into the complaint when "it is integral to the

complaint and there is no dispute about the document's authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A court may also take judicial notice of matters of public record and "adjudicative facts" pursuant to Federal Rule of Evidence 201(b) when considering a Rule 12(b)(6) motion. Goldfarb v. Mayor & City Council of Balt., 791 F.3d 500, 508 (4th Cir. 2015). The Fourth Circuit held that "SEC filings, press releases, stock price tables, and other material on which the plaintiff's allegations necessarily rely" can be considered when ruling on a Rule 12(b)(6) motion. Greenhouse v. MCG Cap. Corp., 392 F.3d 650, 657 (4th Cir. 2004). However, judicial notice should not "be used as an expedient for courts to consider matters beyond the pleadings and thereby upset the procedural rights of litigants to present evidence on disputed matters." Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc., 728 F.3d 354, 360 (4th Cir. 2013) (quotations omitted). If the court does take judicial notice of a document, the facts within that document must be construed in a light favorable to the plaintiff. Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 607 (4th Cir. 2015). If a court chooses to go beyond these documents, the Rule 12(b)(6) motion converts into one for summary judgement, which is governed by Rule 56. Fed. R. Civ. P. 12(d).

## DISCUSSION

## I. Exhibits Attached to Handley's Motion

Handley attached thirteen separate exhibits to the Motion (ECF Nos. 18 and 19) and uses the exhibits to support his arguments for dismissal. ITI contends that the tendered exhibits are beyond the scope of extrinsic documents that can be considered in deciding a Rule 12(b)(6) motion. ECF No. 32 at 5-6.

Exhibits A, D, G, J, L, and M are all SEC filings, which, under Greenhouse v. MCG Capital Corp., can be considered when deciding the Motion if they are integral to the Complaint. 392 F.3d 650, 657 (4th Cir. 2004). In the present case, these documents are not integral to the Complaint because there is no mention of these documents in the Complaint and there is no specific reference to the events that are mentioned in the documents. The mere fact that a document is a SEC filing is not enough to make it qualify for consideration under Greenhouse. Therefore, these documents will not be considered in deciding the Motion.

Exhibits B and E are corporation reinstatements for ITI; Exhibit C is ITI's official name change documentation; and Exhibit F is a letter of intent pertaining to the collaboration between ITI and Cytocom in 2020. All of these documents describe information that predates the accusations in the Complaint and relate to the history that is not described in the Complaint. See

Compl. ¶¶ 9-15. These documents have not been shown to be integral to the Complaint and thus they will not be considered in deciding the Motion.

Exhibit H is an email from a Cytocom employee to Handley and another Cytocom employee concerning approval of a merger agreement. Exhibit I is the document approving the merger agreement. Exhibit K is the actual merger agreement. Handley contends that these documents are integral to the Complaint. ECF No. 19 at 7 n.3. However, the Complaint does not mention any of these documents. Because there is, in the Complaint, no specific mention about these events or the existence of a merger agreement document, this group of documents will not be considered in deciding the Motion.

Because none of the exhibits attached to the Motion are integral to the Complaint, none of them will be considered in deciding the Motion. In sum, the Motion will be measured in perspective of the text of the Complaint and the principles applicable to deciding motions under Rule 12(b)(6). ITI will be accorded the reasonable inferences.

## II. COUNT I: RICO Claim (18 U.S.C. § 1962(c))

In COUNT I, ITI alleges that Handley and his co-conspirators violated RICO (18 U.S.C. § 1962(c)) by participating in a pattern of racketeering activity that caused injury to ITI's business or property. Compl. ¶¶ 35-44. Handley argues that ITI's RICO claim is

8

barred by the Private Securities Litigation Reform Act ("PSLRA") because the statute eliminates securities fraud as an underlying offense in a civil RICO claim. ECF No. 19 at 13-14. Alternatively, Handley argues that RICO's ten-year time bar precludes this claim. Id. at 14. In the Plaintiff's Opposition to Defendant's Motion to Dismiss (ECF No. 32), ITI does not oppose the Motion to the extent that it seeks dismissal of COUNT I. ECF No. 32 at 6 n.2. The PSLRA amended 18 U.S.C. § 1964(c), which now clearly states that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a [RICO] violation." 18 U.S.C. § 1964(c). For that reason and because ITI does not oppose Handley's Motion as to COUNT I, the Motion (ECF No. 18) as to COUNT I will be granted.[2]

**III. COUNT II: §§ 10(b) and 20(a) of the SEA of 1934 and Rule 10b-5**

ITI alleges in COUNT II that Handley violated the SEA of 1934 by knowingly disseminating material misrepresentations and failing to disclose material information concerning the exchange of securities. Compl. ¶¶ 46-51. Under § 10(b) of the SEA of 1934, codified at 15 U.S.C. § 78j, it is unlawful for any person "to use or employ, in connection with the purchase or sale of any security

---

[2] Because ITI does not contest the dismissal of this count and because it is clearly prohibited by the plain text of the PSLRA, it is not necessary to address the argument that the RICO claim is time-barred.

. . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Additionally, when defining the employment of "manipulative and deceptive devices," Rule 10b-5 prohibits any person from (a) employing "any device, scheme, or artifice to defraud," (b) making "any untrue statement of a material fact" or omitting "a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading," or (c) engaging "in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 CFR § 240.10b-5. Section 20 provides joint and several liability for any person who controlled another person found liable under the SEA. 15 U.S.C. § 78t(a).

To state a claim for relief under § 10(b) and Rule 10b-5, ITI must allege that: (1) Handley made a material misrepresentation or omission; (2) Handley had scienter, or a wrongful state of mind; (3) there was a connection between the alleged false statement or omission and the purchase or sale of a security; (4) ITI reasonably relied on Handley's statement or omission; (5) ITI suffered economic loss; and (6) there was a causal connection between the statement (or omission) and the loss, or loss causation. <u>Dura</u>

Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).[3] Additionally, pursuant to the PSLRA and Fed. R. Civ. P. 9(b), the Complaint must meet a heightened pleading standard. For the first element, the Complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). As for the scienter element, the Complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." § 78u-4(b)(2)(A).

## A. Element One: Material Misrepresentation or Omission

First, the Court looks to whether the Complaint pleads that Handley made a material misrepresentation or omission. A statement is a material misrepresentation when it is "<u>misleading</u> as to a <u>material</u> fact." <u>Greenhouse v. MCG Cap. Corp.</u>, 392 F.3d 650, 657 (4th Cir. 2004). A fact is material when there is a "substantial likelihood that the disclosure of the . . . fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." <u>Basic, Inc., v.</u>

---

[3] ITI relies on a four-element test to state a claim under § 10(b) and Rule 10b-5, but the arguments made in the Opposition to the Motion (ECF No. 32) still apply to the six-element test detailed above.

_Levinson_, 485 U.S. 224, 231-32 (1988). Similarly, an omission of fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." _TSC Indus. Inc. v. Northway, Inc._, 426 U.S. 438, 449 (1976); _see also_ _Basic, Inc._, 485 U.S. at 232 ("We now expressly adopt the _TSC Industries_ standard of materiality for the § 10(b) and Ruble 10b-5 context.").

The Court can decide, as a matter of law, that a fact or omission is not material if "no reasonable jury could find it substantially likely that a reasonable investor would find the fact [or omission] at issue material in the 'total mix' of information." _Greenhouse_, 392 F.3d at 657; _see also_ _TSC Indus. Inc. v. Northway, Inc._, 485 U.S. 438, 449 (1976) (using the same standard to determine whether an omission was material). However, in the merger context, "[m]ateriality depends on the facts and thus is determined on a cases-by-case basis." _Basic, Inc._, 485 U.S. at 250.

ITI alleges that Handley made the following material misrepresentations and omission. First, Handley is said to have promised that the Series A shares would convert on a 1-to-1 basis from existing Cytocom shares to Statera shares following the merger. Compl. ¶ 19. The Complaint alleges that this statement was misleading because, at the time it was made, Handley knew it was false and "had no intention of performing the promise." The

12

allegation meets the heightened pleading requirement under the
PSLRA and Rule 9(b). Id. According to the Complaint, this statement
was false because the shares converted on a 3-to-1 basis. Id. ¶
20. Additionally, it is reasonable to infer from the Complaint
that there was additional information about the merger available
to the shareholders, and the fact of the conversion rate would be
material because it could convince an investor to deny approving
the merger if the conversion rate would hurt the value of the
investors' shares. Accordingly, this statement qualifies as a
well-plead material misrepresentation.

Second, the Complaint alleges that Handley represented to ITI
and other Cytocom shareholders that they would receive a
controlling interest in Statera (between 60 and 71 percent), which
was allegedly misleading because Handley knew, at the time, that
Cytocom shareholders would end up owning less than a 50 percent
interest in the post-merger entity. Compl. ¶ 21. This
representation was false because, according to the Complaint, the
shareholders only received an approximately 38 percent interest in
Statera post-merger.[4] Id. ¶ 22. Additionally, this representation

---

[4] In Defendant's Memorandum of Law in Support of the Motion to
Dismiss (ECF No. 19), Handley argues that this statement was not
actionable because "it ultimately turned out to be true." ECF No.
19 at 17. When considering a Rule 12(b)(6) motion, the Court must
construe all facts alleged in the complaint as true. See Ashcroft
v. Iqbal, 556 U.S. 662, 678 (2009). Since the Complaint states as
a statement of fact that the promise to ITI as to the amount of
interest they would hold in the post-merger entity was different

is a material one because the percentage of interest that shareholders would own in an entity plausibly and reasonably could influence a decision to approve a merger. Accordingly, this allegation also complies with the heightened pleading standard.

Third, the Complaint alleges that Handley knowingly omitted to tell ITI and other shareholders that CBLI would receive a $14 million investment, before the closing of the merger, which would necessarily dilute the shareholders' ownership interest in the post-merger entity. Compl. ¶ 24. The Complaint alleges that Handley knew about this large investment because he was one of "the executives reviewing and approving the merger documents on behalf of Cytocom," which meets the pleading standard set by the PSLRA. Id. Additionally, it is plausible that a reasonable investor would find this allegedly omitted fact important in deciding how to vote on the merger, which makes materiality a question of fact that a jury would resolve. For the foregoing reasons, ITI has satisfied the heightened pleading standards of the PSLRA and Rule 9.

Handley contends that the misrepresentation concerning the percentage of ownership interest in the post-merger entity is a forward-looking statement that is protected by the SEA's safe harbor provision, codified at 15 U.S.C. § 78u-5(c)(2). Forward-looking statements that are "accompanied by a cautionary statement

---

from the amount they ultimately owned, Compl. ¶¶ 21-22, this argument is not relevant for the purposes of deciding this Motion.

that the particular oral statement is a forward-looking statement and that the actual results might differ materially from those projected" are not considered a material misrepresentation under the SEA. 15 U.S.C. § 78u-5(c)(2)(A). In the Complaint, there is no mention of cautionary language accompanying Handley's statement that Cytocom shareholders would receive a 60 to 71 percent interest in the post-merger entity. Compl. ¶ 21. Handley points to the merger agreement as the source of the cautionary language, which he argues warned Cytocom shareholders that their percentage of interest could change based on the amount of cash each entity received before the merger's closing date. ECF No. 19 at 18. However, the merger agreement is not integral to the Complaint, so it is not considered in the analysis for this Motion. See infra Section I. Moreover, even if the merger agreement were considered, Handley points to no language in it that would serve as cautionary language. Accordingly, at this juncture, there is no force to the contention that the representation is protected under the safe harbor provision.[5]

---

[5] Nor can this representation qualify as "puffery" as Handley seems to imply because, in making the representation, Handley provided specific numeric figures rather than stating a vague projection with no specific numbers. See Compl. ¶ 21.

**B. Element Two: Scienter**

Next, the Complaint must allege that Handley acted with the "intent to deceive, manipulate or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976). The Fourth Circuit allows claims to be based on "severe" reckless conduct. In re Triangle Cap. Corp. Sec. Litig., 988 F.3d 743, 751 (4th Cir. 2021). Under the PSLRA, ITI is required to state "with particularity facts giving rise to a strong inference that [Handley] acted with the required state of mind." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321 (2007) (quoting 15 U.S.C. § 78u-4(b)(1)). A "strong inference" is raised when, taking all the alleged facts collectively, "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, Inc., 551 U.S. at 323-24.

The Complaint alleges that Handley made the material misrepresentations and omission to ensure that the merger would be approved by the Cytocom shareholders because Handley would personally benefit from the merger by receiving stock, compensation, and bonuses. Compl. ¶ 12(h). The Complaint alleges that Handley made the misrepresentations and omission to secure ITI's support for the merger because "without Plaintiff's approval, the merger could not and would not happen." Id. ¶ 19. The Complaint follows that assertion by alleging that ITI (and the

16

other shareholders) would not have agreed to the merger had the actual percentage of interest in the post-merger entity been truthfully represented. Id. ¶ 48. These allegations are specific, and they rely on particularized facts. They satisfy the applicable pleading standards. And, when the reasonable inferences are accorded to ITI, Handley's culpable scienter is more than sufficiently alleged.

That is particularly so because in the Memorandum of Law in Support of the Motion (ECF No. 19), Handley does not provide any opposing inferences (plausible or otherwise) for why Handley made the statements and omitted to disclose the $14 million investment to ITI and other shareholders. ECF No. 19 at 20-21. Where, as here, ITI's pleading makes a strong showing of scienter, that failure on Handley's part is highly telling.[6]

Accordingly, for the foregoing reasons, ITI met its burden as to the scienter element of COUNT II for the § 10(b) claim.

---

[6] In his Reply Brief (ECF No. 36), Handley provides the competing inference that he did not know about the cash infusion until right before it was announced. ECF No. 36 at 7. However, the Court will not consider this competing inference because it was not raised in the original Memorandum of Law (ECF No. 19). Yousefi v. U.S. Immigr. & Naturalization Serv., 260 F.3d 318, 326 (4th Cir. 2001).

## C.   Element Three: Connection Between the Statements and the Purchase or Sale of a Security[7]

The third element is derived from the text of § 10(b), codified at 15 U.S.C. § 78j, which prohibits the use of any manipulative or deceptive device "in connection with the purchase or sale of any security . . ." 15 U.S.C. § 78j(b). The Supreme Court has instructed "that the statute should be construed not technically and restrictively, but flexibly to effectuate its remedial purpose." Sec. & Exch. Comm'n v. Zandford, 535 U.S. 813, 819 (2002). On the other hand, the statute should not be "construed so broadly as to convert every common-law fraud that happens to involve securities into a violation of § 10(b)." Id. Although the conversion of stock as the result of a merger is not in plain terms defined as the purchase or sale of a security, the Supreme Court has determined that a shareholders' approval of a merger that involves the conversion of stock is a "purchase" within the language of § 10(b). See Sec. & Exch. Comm'n v. Nat. Sec., Inc., 393 U.S. 453, 467 (1969). And there is alleged a connection between the merger and the representations and omission at issue. For example, misrepresentations about the conversion rate for the Series A shares clearly are related to the "purchase or sale of a security" because they directly discuss the securities. Handley's

---

[7] Neither Handley nor ITI addressed this element specifically in their briefs. ECF Nos. 19 and 32. Nonetheless, it is appropriate to assure that the element has been sufficiently alleged.

alleged misrepresentation that ITI, and other Cytocom shareholders, would hold a 61-70 percent interest in the post-merger entity is also connected to the "purchase or sale of a security" because it relates to the number of securities the shareholders would have. Lastly, Handley's alleged omission of the $14 million capital investment is connected to the "purchase of sale of a security" because it affects how much interest the shareholders could own in the post-merger entity. Accordingly, this element is met for the misrepresentations and omission at issue in the § 10(b) claim.

D.   **Element Four: Reasonable Reliance on Handley's Statement**

The fourth element is that ITI reasonably relied on Handley's misrepresentations and omission because reasonable "[r]eliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." Basic, Inc. v. Levinson, 485 U.S. 224, 243 (1988). While it is permissible for ITI to rely on Handley's misrepresentations, it must also have conducted "at least minimal diligence" and cannot "close [its] eyes to a known risk." Xia Bi v. McAuliffe, 927 F.3d 177, 186 (4th Cir. 2019) (quotations omitted). In other words, the reliance must be reasonable.

The Complaint specifically and plausibly alleges that ITI relied on Handley's misrepresentations and omission when voting in favor of the merger. Compl. ¶ 9, 50. The Complaint also alleges,

specifically and plausibly, that ITI and the other shareholders "would not have agreed to the merger of Cytocom and CBLI if they had known about the actual percentage of shares of the post-merger entity that would be issued to them." Id. ¶ 48.

Handley argues that, as a matter of law, ITI cannot rely on his oral statement because they are contradicted by the terms of the merger agreement. ECF No. 19 at 22 (quoting Foremost Guar. Corp. v. Meritor Sav. Bank, 910 F.2d 118, 126 (4th Cir. 1990) (holding that "one may not reasonably rely upon an oral statement when he has in his possession a contrary statement in writing").[8] However, since the merger agreement is not mentioned in the Complaint and thus is not integral, it is not appropriately considered in resolving the Motion.

### E.   Element Five: Economic Loss

The fifth element is simply whether ITI suffered an economic loss. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342 (2005). The Complaint alleges that ITI suffered a loss totaling "[t]he value of the difference between the promised interest and the interest

---

[8] As ITI raises in its Opposition to Defendant's Motion to Dismiss (ECF No. 32 at 19-20), the Meritor court was not analyzing a motion to dismiss. Instead, the Fourth Circuit had a rich factual record developed during a "lengthy and complex" case. 910 F.2d at 120. Contrastingly, at this stage in the litigation, it is not clear what written information was available to ITI at the time Handley made the statements at issue and whether the written material was contradictory. Accordingly, it is premature to resolve this (and related) factual issue in deciding the Motion.

actually received by Plaintiff following the merger," which they estimate is no less than $4 million. Compl. ¶¶ 26-27. This element is satisfied, and Handley does not suggest otherwise.

F.   **Element Six: Loss Causation**

The sixth and final element, loss causation, is "the causal connection between the material misrepresentation and the loss." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342 (2005); see also McCabe v. Ernst & Young, LLP, 494 F.3d 418, 426 (3d Cir. 2007) (defining loss causation as "whether the misrepresentation or omission proximately caused the economic loss"). At this stage of the litigation, the Complaint "need not conclusively show that the securities' decline in value is attributable solely to the alleged fraud." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 472 (4th Cir. 2011). Instead, the misrepresentation or omission must be "one substantial cause of the" economic loss, which is sufficient for a showing of proximate cause. Id. And loss causation must have been pleaded with "sufficient specificity" pursuant to Fed. R. Civ. P. 9(b). Id. at 471.

The Complaint alleges that, without the two misrepresentations and one omission, ITI would not have agreed to the merger, Compl. ¶ 48, and that without the consent of ITI, the merger would not have been approved by Cytocom shareholders. Id. ¶ 19. On the other hand, Handley argues that it was the terms of

21

the merger agreement and a previous merger that caused ITI's economic loss rather than his misrepresentations and omission. ECF No. 19 at 13.

Although the causal connection between the misrepresentations and the economic loss may be revealed to be too attenuated to constitute proximate causation after discovery of all facts, the Complaint adequately alleges that Handley's misrepresentations and omission caused their economic loss and does so plausibly and with sufficient specificity. So, this element is met.

Because ITI has sufficiently pled all six elements with the requisite particularity, and the Complaint meets the applicable pleading standard, the Motion to Dismiss regarding the § 10(b) and Rule 10b-5 claim will be denied.

### G.   Section 20(a) Claim

Section 20(a) of the SEA of 1934, codified at 15 U.S.C. § 78t, proscribes that "every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person." 15 U.S.C. § 78t(a). "The liability of a control person under section 20(a) is derivative of—and dependent upon—liability of a controlled person under section 10(b)." Singer v. Reali, 883 F.3d 425, 438 (4th Cir. 2018). Thus, in order to plead a violation of § 20(a), Plaintiff must allege "(1) a predicate violation of §

22

10(b) and (2) control by the defendant over the primary violator." In re Mut. Funds Inv. Litig., 566 F.3d 111, 129-30 (4th Cir. 2009), rev'd on other grounds sub nom Janus Cap. Grp., Inc. v. First Derivative Traders, 564 U.S. 135 (2011) (citing Maher v. Durango Metals, Inc., 144 F.3d 1302, 1305 (10th Cir. 1998)). In other words, "[§] 20(a) clearly assigns secondary liability upon demonstration of a primary violation by the controlled person." In re MicroStartegy Sec. Litig., 115 F. Supp. 2d 620, 659 (E.D. Va. 2000) (emphasis added).

Here, the Complaint only details misrepresentations and an omission that Handley made which, if proved, would result in his liability under § 10(b). More importantly, the Complaint does not allege a primary violation by a person controlled by Handley. The Complaint alleges that "Defendant and the Conspirators acted as controlling persons of Cytocom and Statera" and that "[b]y virtue of their positions within . . . these entities, [they] had the power to cause Cytocom and Statera to engage in wrongful conduct." Compl. ¶ 51. However, the Complaint does not allege that Cytocom or Statera is liable under § 10(b) nor that Handley was in control of any other person who violated § 10(b). Because there is no plausible allegation that Handley was in control of a person who committed a § 10(b) violation, this aspect of COUNT II must be dismissed.

23

Accordingly, Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 18) regarding COUNT II will be granted as to the § 20(a) claim and denied as to the § 10(b) and Rule 10b-5 claim.

## IV.   COUNT III: § 12(2) of the Securities Act of 1933

Section 12(2) of the Securities Act of 1933, codified at 15 U.S.C. § 77l, gives a private right of action to security purchasers against the seller of that security who utilized:

> any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements.

15 U.S.C. § 77l(a)(2). To state a claim for relief under § 12(2), a complaint must allege that: (1) the defendant offered or sold a security; (2) by using any means of communication in interstate commerce; (3) through a prospectus or oral statement; (4) by making a false statement or omission of material fact; (5) the untruth of which was known by the defendant but not known by the plaintiff; and (6) that causes the plaintiff's damages. Gasner v. Bd. of Supervisors of the Cnty. of Dinwiddie, 103 F.3d 351, 356 (4th Cir. 1996).

As for the first element, both parties assume that Handley offered or sold a security because it is not argued otherwise in either brief (ECF Nos. 19 and 32). Their treatment of this element

appears to be consistent with other provisions of federal securities law. <u>See Sec. & Exch. Comm'n v. Nat. Sec., Inc.</u>, 393 U.S. 453, 467 (1969) (determining approval of a merger falls within a "purchase" under § 10(b)); <u>Junker v. Crory</u>, 650 F.2d 1349, 1359 (5th Cir. 1981) ("A merger may amount to a purchase or sale of a security for purposes of the federal securities laws."). Nor is there an issue raised as to whether Handley's role satisfies the first element.

The second element is met because the Complaint alleges that "Defendant transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce," the misrepresentations through emails and telephone calls from September 2020 to May 2021. Compl. ¶¶ 21, 39. That plainly meets the second element.

The third element requires that the offer of sale be made through either "a prospectus or oral communication." 15 U.S.C. § 78l. The Complaint alleges that at least one of the representations was made through telephone calls, which meets the third element. Compl. ¶ 21.

The fourth element requires a false statement or omission of material fact by the defendant, which is met by the allegation of the misrepresentations and omission identified in the Complaint for the same reasons that the kindred element is met under § 10(b).

See infra Section II(A); Compl. ¶¶ 18-25; Seidman v. McDonald, 929 F.2d 694 (Table), at *3 (4th Cir. 1991) (unpublished) (equating "materiality" for § 10(b) and § 12(2)).

The fifth element is met because the Complaint alleges multiple times (sufficiently and plausibly) that Handley knew that his representations and omission were false. That meets the pleading standards of the PSLRA and Fed. R. Civ. P. 9(b) as described above. Compl. ¶¶ 19, 21, 24; see infra Section II(B).

Lastly, Handley's statements allegedly caused ITI to approve the merger, which led to its economic loss which is the "value of the difference between the promised interest and the interest actually received by Plaintiff." Id. ¶¶ 26, 48. That is legally sufficient as to cause.

Accordingly, because all six elements are sufficiently pled, the Motion will be denied as to COUNT III.

## V.   COUNT IV: Common Law Conspiracy

Under Virginia common law, conspiracy is defined as "two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 320 (4th Cir. 2012) (quoting Com. Bus. Sys., Inc. v. BellSouth Servs., Inc., 453 S.E.2d 261, 267 (Va. 1995)). To state a viable claim for common law conspiracy, the Complaint must show (1) an agreement between two or more persons; (2) the purpose of

the agreement must be to accomplish an unlawful purpose or a lawful purpose by unlawful means; (3) the agreement resulted in damages to the plaintiff; and (4) an underlying tort was committed. Firestone v. Wiley, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (citing Glass v. Glass, 321 S.E.2d 69 (Va. 1984)).

Under the intracorporate immunity doctrine, a conspiracy does not exist when corporate agents or the corporation itself are the conspiring persons because "acts of corporate agents are acts of the corporation itself." ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002) (citing to Bowman v. State Bank of Keysville, 331 S.E.2d 797, 801 (Va. 1085)). However, an exception exists when "a corporate officer has an independent personal stake in achieving the corporation's illegal objectives" if the personal stake is independent of the relationship to the corporation. ePlus Tech., Inc., 313 F.3d at 179.

The Complaint alleges that, at all relevant times, Handley was the Chief Executive Officer of Cytocom and Statera. He allegedly conspired with Peter Aronstam, who, at all relevant times, was Chief Financial Officer of Cytocom and Statera, and with Cozette McAvoy, who, at all relevant times, was Chief Legal Counsel of Cytocom and Statera, to "make material false statements and misrepresentations regarding Cytocom and Statera in order to financially benefit themselves." Compl. ¶¶ 11-12, 58. In addition to identifying the three co-conspirators, the Complaint also

27

alleges that all three officers were operating in their respective business capacities "at all relevant times." Id. ¶ 10-12. A reasonable reading of the Complaint is that all three were officers of Cytocom when the wrongs were committed.

Thus, the Complaint clearly identifies a conspiracy that is typically barred by the intracorporate immunity doctrine because all three co-conspirators were operating as part of a single corporate entity. ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002). Both parties rightly agree with this legal precept. See ECF No. 42 at 2-3; ECF No. 43 at 1-2. However, the parties disagree as to whether Virginia law recognizes an exception to the doctrine when an individual has an independent personal stake in the conspiracy and whether the exception applies in this case. See ECF No. 42 at 4-5; ECF No. 43 at 2-4. The Court finds that it is unnecessary to consider whether Virginia recognizes such an exception because the Complaint fails to allege a sufficient independent personal stake that would overcome the intracorporate immunity doctrine. See Douty v. Irwin Mortg. Corp., 70 F. Supp. 2d 626, 632 (E.D. Va. 1999) (declining to decide whether the personal stake exception applies under Virginia law when the alleged facts showed it did not apply).

The intracorporate immunity doctrine does not bar a conspiracy claim when "the officer has an independent personal stake in achieving the corporation's illegal objectives."

28

*Greenvile Pub. Co., Inc. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). The personal stake can have "no unity of purpose" with the corporation and is generally found to exist when it is at odds with the interests of the corporation. *Baylor v. Comprehensive Pain Mgmt. Ctrs., Inc.*, No. 7:09-cv-472, 2011 WL 1327396, at *12 (W.D. Va. April 6, 2011); *see also ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) (finding the officer had an independent personal stake when his personal benefit manifested if the corporation was sent into bankruptcy); *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 151 F. Supp. 2d 723, 731 (W.D. Va. 2001) (describing the independent personal stake as "wholly separable from the more general and indirect corporate benefit"); *Colgate v. Disthene Grp., Inc.*, 86 Va. Cir. 218, at *5 (Va. Cir. Ct. 2013) (finding the intracorporate immunity doctrine did not apply when officers combined to harm the corporation). Contrastingly, courts have found that the exception does not apply when an officer's benefits from the conspiracy are tied to paychecks or other financial benefits derived from the corporation. *See e.g.*, *Baylor*, No. 7:09-cv-472 at *13 (finding the officer had a dependent personal stake when the goal of the conspiracy was to maximize personal payments from the corporation at another's expense); *Douty v. Irwin Mortg. Corp.*, 70 F. Supp. 2d 626, 632 (E.D. Va. 1999) (finding the personal stake exception did not apply when the alleged personal stake was increased commissions

that were determined and paid by the corporation); Kmart Corp. v. Meadowbrook, L.L.C., 81 Va. Cir. 365, at *5 (Va. Cir. Ct. 2010) (finding the independent personal stake did not apply when the benefit was the "profit from performing work for which the party was hired").

Here, the Complaint alleges that Handley and the co-conspirators engaged in the conspiracy "in order to financially benefit themselves" in the form of "stock, compensation, and bonuses" that derived from the merger of Cytocom and CBLI. Compl. ¶¶ 13(h), 58. ITI further contends that Handley would not have received this financial benefit if not for ITI's approval of the merger. Id. ¶ 43 (reincorporated into the conspiracy claim in ¶ 56).

However, the Complaint does not allege that Handley would gain a financial benefit independent from Cytocom or Statera. Nor does the Complaint allege that Handley and the co-conspirators were working to harm the corporation or to act at odds with its interests. Rather, Handley's financial benefit is said to be wholly dependent on the corporation achieving its interests by way of the merger. And, although the Complaint alleges that Handley's conduct harmed Cytocom shareholders, see id. ¶ 26, it does not allege harm to the corporation as an entity. Even viewing the facts in the light most favorable to ITI, the Complaint actually shows that the corporation of Cytocom benefitted from its merger with CBLI as

30

Cytocom was able to reap the benefits of the $14 million cash infusion that preceded the merger. See id. ¶ 24. Because the corporation was not harmed by the conspiracy and Handley's financial benefit was directly tied to his relationship with the corporation, the independent personal stake exception could not revive the conspiracy claim. See ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002); Baylor v. Comprehensive Pain Mgmt. Ctrs., Inc., No. 7:09-cv-472, 2011 WL 1327396, at *12 (W.D. Va. April 6, 2011).

Accordingly, the intracorporate immunity doctrine bars the common law conspiracy claim, so the Motion as to COUNT IV will be granted.

## VI.  COUNT V: Fraud

Under Virginia law, a plaintiff must show the following elements to state a viable claim for fraud: (1) a false representation or deliberate nondisclosure, (2) of a material fact, (3) that the defendant made intentionally and knowingly, (4) with intent to mislead, (5) the plaintiff reasonably relied on the false representation, and, (6) with resulting damage to the plaintiff. Arnlund v. Deloitte & Touche LLP, 199 F. Supp. 2d 461, 486 (E.D. Va. 2002); Davis v. Marshall Homes, Inc., 576 S.E.2d 504, 506 (Va. 2003). This count is subject to the heightened pleading standard under Fed. R. Civ. P. 9(b), which requires that a complaint "state with particularity the circumstances

31

constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, the third and fourth elements that the defendant made the false representation intentionally and knowingly with the intent to mislead may be alleged generally. Id.

For the same reasons as stated regarding the § 10(b) SEA claim, see infra Section III, the Complaint has sufficiently pled a claim for fraud. See Carlucci v. Han, 886 F. Supp. 2d 497, 527 (E.D. Va. 2012) ("The elements of a state law fraud claim are essentially the same as those necessary to establish a Section 10(b) claim, except that fraud must be proved by clear and convincing evidence."). Here, the Complaint alleges that Handley made at least two false representations: (1) that ITI's Series A shares would convert on a 1-to-1 basis and (2) that ITI would receive a 60 to 71 percent controlling interest in the post-merger entity. Compl. ¶¶ 19, 21. Additionally, the Complaint alleges that Handley failed to disclose the $14 million investment that would affect ITI's ownership interest in the post-merger entity. Id. ¶ 24. These statements and the omission were plausibly alleged to be material because "Plaintiff and the other Cytocom shareholders would not have agreed to the merger . . . if they had known" that these statements were false or knew the omitted information. Id. ¶ 48. Further, the Complaint meets the heightened pleading standard required by Rule 9(b) because the Complaint states the misrepresentations and the omission with particularity and

explains why these statements were indeed false. <u>See</u> Compl. ¶¶ 19-24. As for the third and fourth elements respecting Handley's state of mind and knowledge, the Complaint adequately alleges that Handley knew that these statements were false and made them in order to induce ITI's consent for the merger, which is sufficient to meet these elements. <u>Id.</u> ¶¶ 18-19, 21. Finally, ITI sufficiently alleges that it relied on Handley's statements and that the reliance was reasonable and that the alleged fraud resulted in damage. <u>Id.</u> ¶¶ 26, 48.

Accordingly, the Complaint sufficiently alleged a claim for fraud, so the Motion, as to COUNT V, will be denied.

**CONCLUSION**

For the foregoing reasons, DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF No. 18) will be granted in part and denied in part. COUNT I, COUNT IV, and the § 20(a) portion of COUNT II will be dismissed with prejudice. The Motion will be denied as to the § 10(b) portion of COUNT II, COUNT III, and COUNT V.

It is so ORDERED.

/s/

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 4, 2022

33
